**Donald B. SARGEANT and Joe Mohwish, Appellants,**

v.

**Harry DIXON, Jr., United States Attorney for the Southern District of Georgia, et al., Appellees.**

**Nos. 95–5357, 95–5358 and 95–5359.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 7, 1997.

Decided Dec. 9, 1997.

Joe Mohwish, appearing pro se, was on the brief for appellants.

Katherine J. Barton, student counsel, argued the cause for amicus curiae on the side of appellants, with whom Steven H. Goldblatt, Washington, DC, appointed by the court, Mary L. Clark, Attorney, and Carlos Dequina, student counsel, were on the briefs.

Meredith Manning, Assistant U.S. Attorney, Rockville, MD, argued the cause for appellees, with whom Mary Lou Leary, U.S. Attorney, Washington, DC, and R. Craig Lawrence, Assistant U.S. Attorney, were on the brief.

Before: GINSBURG, SENTELLE, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Joe Mohwish and Donald B. Sargeant seek a writ of mandamus requiring the United States Attorneys for the District of Columbia and the Southern District of Georgia to present certain information to a grand jury. We hold that they do not have constitutional standing to pursue such relief, and we therefore affirm the judgment of the district court dismissing their suit for lack of jurisdiction.

## I. Background

The Organized Crime Control Act of 1970 includes several provisions designed to encourage citizens to report crimes and to guard against the possibility of government corruption. One section provides that:

> It shall be the duty of each [special] grand jury ... to inquire into offenses against the criminal laws of the United States alleged to have been committed within that district. Such alleged offenses may be brought to the attention of the grand jury by the court or by any attorney appearing on behalf of the United States for the presentation of evidence. Any such attorney receiving information concerning such an alleged offense from any other person shall, if requested by such other person, inform the grand jury of such alleged offense, the identity of such other person, and such attorney's action or recommendation.

18 U.S.C. § 3332(a).

Convicted felons Joe Mohwish, whose appeals have been heard and largely rejected by the Supreme Court, *see Mohwish v. United States*, 507 U.S. 956, 113 S.Ct. 1378, 122 L.Ed.2d 754 (1993), and Donald Sargeant claim that they have information relating to various crimes committed by officers of the United States Government, including the Attorney General, the Solicitor General, "all former directors of the Executive Office for United States Attorneys dating back to 1980," the district judge who presided at Mohwish's trial, the circuit judges who heard his appeal, and various subordinate officials. The alleged information relates to three conspiracies, to wit: (1) a conspiracy to present false evidence at Mohwish's trial; (2) a conspiracy wrongfully to prosecute several other

individuals; and (3) a conspiracy within Prison Industries, Inc. to violate various laws. Mohwish sent these allegations to the Office of the Attorney General, along with two books of what Mohwish describes as "hard and *verifiable*" evidence, and requested pursuant to 18 U.S.C. § 3332 that the evidence be presented to a grand jury.

When after several inquiries Mohwish had received no reply, he and Sargeant (hereinafter collectively Mohwish) brought three mandamus actions in the district court seeking, among other things, to compel the U.S. Attorneys to present the evidence to a grand jury. Mohwish also sought (1) to have a grand jury empanelled in the event that one was not already sitting; (2) to present his information to the grand jury personally or through his lawyer, *but see Simpson v. Reno*, 902 F.Supp. 254, 257 (D.D.C.1995) (holding that § 3332 does not give plaintiff right personally to present information to grand jury), *aff'd* 1996 WL 556625 (D.C.Cir. Sept.25, 1996); (3) to compel the Attorney General and the United States Attorneys for the Southern District of Georgia and for the District of Columbia to "take any and all steps to assist the petitioners ... throughout these matters," a step for which there is no apparent authority; (4) to have the court appoint a special prosecutor, *but see In re Kaminski*, 960 F.2d 1062 (D.C.Cir.1992) (holding that private citizen lacks standing to seek appointment of special prosecutor); or (5) to have the district court itself present. his information to the grand jury pursuant to § 3332—a point Mohwish does not seem to have pursued upon appeal.

The district court dismissed the three actions, *sua sponte*, on the ground that "a private party lacks a judicially cognizable interest in the prosecution or nonprosecution of another.... Accordingly, plaintiffs do not have standing." Mohwish appealed, and this court consolidated the three actions and appointed the *amicus curiae* to present arguments on Mohwish's behalf.

## II. Analysis

■ Mohwish's request that his evidence be presented to the grand jury is, unlike his other requests, at least plausible. Section 3332 says on its face that the U.S. Attorney "shall" present to the grand jury information provided by "any person," and one district court has held that any person has standing to enforce this duty. *See In re Grand Jury Application*, 617 F.Supp. 199 (S.D.N.Y.1985) (granting mandamus to enforce § 3332); *see also Simpson*, 902 F.Supp. at 254 (dictum). In our view, however, Mohwish does not have standing to enforce the statute.

■ In order to have standing to sue in federal court, Article III of the Constitution of the United States requires that a complainant have suffered an injury in fact, which the Supreme Court has defined as the invasion of a concrete, imminent, and legally cognizable interest. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 573 n. 8, 112 S.Ct. 2130, 2143 n. 8, 119 L.Ed.2d 351 (individual can enforce procedural rights only if "the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing"). A legally cognizable interest means an interest recognized at common law or specifically recognized as such by the Congress. *See id.* at 578, 112 S.Ct. at 2145 (noting that the Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law").

The Government argues, and we agree, that the interests Mohwish proffers—in the prosecution of government officials and in seeing that the laws are enforced—are not legally cognizable within the framework of Article III. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149–50, 35 L.Ed.2d 536 (1973) (interest in prosecution of another does not support standing); *Lujan*, 504 U.S. at 574–78, 112 S.Ct. at 2143–46 (1992) (generalized grievance about proper application of laws does not support standing). Insofar as Mohwish has a legally cognizable interest in collaterally attacking his conviction by convincing a grand jury to indict the federal officers who, he alleges, wrongfully prosecuted him, the vindication of that interest on the basis of the allegations in his complaint is too speculative (not to say fanciful) to support his standing. *See Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136 (standing also requires that it be " 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision.").

Finally, insofar as the *amicus* asserts that Mohwish has an interest merely in "being heard," we do not conceive that to be an end in itself but only a means to some other end—presumably one or more of the three ends proffered and found wanting in the prior paragraph. A grand jury hears evidence for the purpose of deciding whether a prosecution is warranted. It follows that if Mohwish has an interest in "being heard" by the grand jury that is at all relevant to the grand jury's mission, it can only be because he has an ulterior interest in seeing certain persons prosecuted. If Mohwish has any other interest in being heard—such as the cathartic benefit he might derive from telling the story of his own wrongful prosecution, not unlike the interest of the "ancient Mariner [who] stoppeth one of three" his tale to tell—that interest is not cognizable in a legal system concerned only with the redress of concrete injuries.

■ Indeed, there is nowhere in our legal system a recognized interest merely in "being heard" as an end in itself. To the extent that the "right to be heard" has a familiar ring at all, it is as an echo of procedural due process. The right to due process is an instrumental entitlement aimed at ensuring that a person is not wrongfully deprived of his liberty or of an interest in property. As the Supreme Court said in *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972):

> The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property.

*Id.* at 80–81, 92 S.Ct. at 1994. Absent an underlying property or liberty interest, therefore, one has no entitlement to procedural due process and hence no "right to be heard."

The *amicus* suggests that because § 3332 itself gives Mohwish a right to be heard he need not assert a reason for wanting to be heard, let alone a concrete interest in being heard, any more than a person suing under the Freedom of Information Act need allege a reason for pursuing the information to which he has a statutory right. *See, e.g., Akins v. FEC*, 101 F.3d 731, 736 (D.C.Cir. 1996) (anyone denied access to information under FOIA has standing to sue regardless of reason for wanting information); *see also* Maxwell L. Stearns, *Standing and Social Choice: Historical Evidence*, 144 U. Pa. L.Rev. 309, 453–59 (1995) (arguing pre-*Lujan* caselaw indicates Congress has power to "define abstract injuries as individual rights enforceable in federal court"). The analogy does not hold, however; the one case involves receiving information from, the other giving information to, the Government. The receipt of information is a tangible benefit the denial of which constitutes an injury, whereas the giving of information is at most of indirect benefit to the giver.

We emphasize that Mohwish lacks standing because he has failed to identify any cognizable injury, not because § 3332 is inherently unenforceable at the instance of a private litigant; for example, a person who would be entitled to a bounty if a prosecution were initiated might well have standing. *Cf. Lujan*, 504 U.S. at 573, 112 S.Ct. at 2143. Even if holding that Mohwish lacks standing meant that no one could initiate judicial enforcement of § 3332, however, it would not follow that Mohwish (or anyone else) must have standing after all. Rather, in such circumstance we would infer that "the subject matter is committed to the surveillance of Congress, and ultimately to the political process." *United States v. Richardson*, 418 U.S. 166, 179, 94 S.Ct. 2940, 2947, 41 L.Ed.2d 678 (1974).

### III. Conclusion

In sum, Mohwish alleges no interest sufficient to give him standing to enforce 18 U.S.C. § 3332. The judgment of the district court, dismissing his petition for lack of jurisdiction, is therefore

*Affirmed.*